UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2005 OCT 17 P 1: 16
U.S. DISTRICT COURT
DISTRICT OF MASS.

TARAMATTIE DOUCETTE,
ROBERT DOUCETTE, INDIVIDUALLY
AND AS NEXT FRIEND OF CHRISTOPHER
DOUCETTE, SEAN DOUCETTE, AND
PATRICK DOUCETTE,
      PLAINTIFFS

VS.                            CIVIL ACTION NO. 04-10960-RBC

PANERA, INC.,
      DEFENDANT

## PLAINTIFFS' MOTION FOR NEW TRIAL, PURSUANT TO RULE 59

Now come the plaintiffs and move this Honorable Court, pursuant to Fed.R.Civ.P.59(a), to order a new trial in this matter. As grounds, the plaintiffs state that the verdicts, including the jury's award of ten thousand dollars ($10,000.00) to plaintiff Taramattie Doucette for her pain and suffering, mental anguish, and impairment of her ability to enjoy life; the jury's verdict of no loss of consortium by Robert Doucette; and the jury's verdict of no loss of parental companionship by Patrick Doucette and Christopher Doucette, are against the clear weight of the evidence.

    A. <u>Standard to be applied in determining whether the plaintiffs are entitled to a new trial.</u>

A new trial is warranted when the verdict is so clearly against the weight of the evidence that it amounts to a manifest miscarriage of justice. 12 Moore's Federal Practice (3d ed.), s. 59.13[2][f], citing <u>Lama v. Borras</u>, 16 F.3d 473, 477 (1st Cir. 1994), and <u>Bogosian v. Mercedes-Benz of N.A., Inc.</u>, 104 F.3d 472, 484-483 (1st Cir. 1997). Unlike a ruling on a motion for judgment as a matter of law, in which all issues of credibility must be resolved in favor of the party defending the verdict, on a motion for a

new trial, the judge may make his own judgments as to credibility. Moore's, supra, citing Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2nd Cir. 1987); Williams v. Nichols, 266 F.2d 389, 391-393 (4th Cir. 1959); General Foam Contractors, Inc. v. Tenneco Chems., Inc., 695 F.2d 281, 285 (7th Cir. 1982); Day v. Amax, Inc., 701 F.2d 1258, 1262 (8th Cir. 1983). A judge may grant a new trial motion even though substantial evidence supports the verdict. Moore's, supra, citing Lama v. Borras, supra, at 477 (substantial evidence supporting verdict does not bar grant of new trial); Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2nd Cir. 1992); Poynter v. Ratcliff, 874 F.2d 219, 222-223 (4th Cir. 1989).

B. <u>Taramattie Doucette is entitled to a new trial on her damages.</u>

When the amount of a verdict is so unreasonable as to be entirely disproportionate to the plaintiff's injury, the plaintiff's motion for a new trial should be granted. Moore's, supra, s. 59.13[2][g], citing Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir. 1995); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3rd Cir. 1995).

The jury's award of damages in the amount of ten thousand dollars for Taramattie Doucette's pain and suffering, mental anguish, and impaired ability to enjoy life, is entirely disproportionate to the injury which any rational juror would attribute to a severe second degree burn, covering a large portion of Ms. Doucette's right foot. This was no ordinary coffee burn: as stipulated, the canister that was dropped by the defendant's employee contained 1.75 gallons of coffee, heated to 197 degrees Fahrenheit, plus or minus three degrees. The defendant urged the jury to conclude that Ms. Doucette's wound had healed within a month or less, focusing on the statements by Dr. Mayo Johnson on 11/19/01 ( Trial Exhibit 3), to the effect that Ms. Doucette should "get right

2

into the shower....," and that she "will heal fine with only minimal scarring and no functional loss." However, there was no rational reason for the jury to ignore or give less weight to the statements of the same Dr. Mayo Johnson, on 1/28/02, in response to Ms. Doucette's "complaining of pain and disfiguration in her right ankle resulting from her partial thickness burn in November 2001." On 1/28/02, Dr. Johnson stated that "The burn is healing perfectly well and it is <u>only two months since the injury</u>. I explained to her <u>that the healing would go on for almost another year</u>...."   The evidence was uncontroverted that Ms. Doucette continued to be treated at Harvard Vanguard for neuropathic pain until 10/8/02. She was treated elsewhere after that, by Dr. Steven Van Dam and consulting neurologists.

   As noted above, the Court while considering a motion for a new trial may make independent judgments as to credibility. The jury apparently decided that Taramattie Doucette was not credible as to the degree of pain she suffered, or as to the duration of that pain. The evidence in this trial does not give a plausible basis for the jury to have reached this conclusion. There was no evidence, for example, that Ms. Doucette's activity level was inconsistent with the pain that she stated she felt, or the pain treatment reflected in her medical records. Rather than pointing to any evidence that challenged Ms. Doucette's testimony as to her pain, the defendant emphasized the fact that Ms. Doucette was an attorney, tacitly inviting the jury to conclude that an attorney is not to be believed. In this context, it is entirely appropriate for the Court to substitute its own view of Ms. Doucette's credibility, and to conclude that the jury's award of $10,000.00 is patently unreasonable, and entirely disproportionate to her injury.

3

C. <u>Plaintiff Robert Doucette is entitled to a new trial, in that the jury's verdict of no loss of consortium is so clearly against the weight of the evidence as to amount to manifest miscarriage of justice.</u>

As argued above, there was no basis for the jury to conclude that Taramattie Doucette's severe pain from her burn only lasted for a month or so; even if the jury did have a reasonable basis for reaching this conclusion, there is no rational basis for the jury's conclusion that Robert Doucette suffered no loss of consortium. As instructed by the Court, Mr. Doucette was entitled to compensation for loss of consortium including "the right to sexual relations between spouses as part of the marriage relationship." ( p.9, Jury Instructions on Specific Claims and Defenses, Claim of Robert Doucette). For the jury to have concluded that Mr. Doucette had no loss of consortium, it would have had to conclude that there was no interruption of sexual relations between Taramattie and Robert Doucette, caused by the injury to Ms. Doucette. There is no basis in the evidence of this trial for such an assumption, which is ludicrous on its face. This verdict is clearly unsound, and must be set aside.

D. <u>Plaintiff Robert Doucette, as next friend of Patrick Doucette, is entitled to a new trial, in that the jury's verdict that Patrick Doucette had no loss of his mother's companionship due to her burn injury, is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice.</u>

It is uncontroverted that Patrick Doucette was not quite two years old when his mother, Taramattie Doucette, suffered the burn injury on November 10, 2001. Taramattie and Robert Doucette both testified that Ms. Doucette had been primarily responsible for Patrick's care prior to her injury; Ms. Doucette testified that she was "Patrick's whole world." There was no evidence to contradict this testimony, or to contradict the testimony of both his parents that Patrick had to be kept away from his mother in the weeks after her injury, so that he would not accidentally hurt her foot. The

4

deposition testimony of Paula Hovey, RN, was that she only observed Ms. Doucette engaging in "activites of daily living" in her bed: "attempting to eat, sleeping in bed, eating, maybe attempting to, like, wash maybe in bed or, you know, her husband may have brought her something to get washed up in bed or something to eat in bed." (Deposition, p. 53, read to jury). Paula Hovey testified by deposition that it was Ms. Doucette's sister who was "taking care of the kids." (Deposition, p. 53, read to jury).

On the basis of the evidence at trial, there was no sound basis for the jury to conclude that Patrick had no loss of his mother's companionship. It is possible that the jury thought that Patrick was not dependent on his mother, because there were other adults who looked after him while his mother was recovering from her burn. This notion would make a nullity of virtually any child's claim for loss of parental companionship – when a parent is unavailable to a small child, it is always necessary that someone else step in to look after the child. This is no basis upon which to conclude that the child did not lose the parent's companionship for a period of time. It is also possible that the jury misunderstood the Court's instructions, and thought that Patrick had to have had a permanent loss of parental companionship. In any event, the jury's finding that Patrick had no loss of his mother's companionship is so clearly against the weight of the evidence that it constitutes a manifest miscarriage of justice.

> E. Plaintiff Robert Doucette, as next friend of Christopher Doucette, is entitled to a new trial, in that the jury's verdict that Christopher Doucette had no loss of his mother's companionship due to her burn injury, is so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice.

The plaintiffs' evidence was uncontroverted that Christopher Doucette was age 7 in November, 2001, when his mother was burned at the defendant's restaurant.

Christopher was with his mother when she was injured, and witnessed her agony at the restaurant, in the ambulance, and at the emergency ward. His parents testified that Christopher, like Patrick Doucette, had to be kept away from his mother to avoid injury to her burned foot. Taramattie Doucette testified that she had been actively engaged with Christopher in the Cub Scouts program, e.g. on the popcorn sale of November 10, 2001, and that she could no longer do so after she was burned. The jury's verdict that Christopher had no loss of parental companionship due to his mother's injury is certainly against the weight of the evidence, and is indicative of the jury's failure to reason its way to its verdict.

> F. <u>The jury's verdict that none of Taramattie Doucette's family members had a loss of consortium or parental companionship, together with the jury's disproportionately small award to Taramattie Doucette for her pain and suffering and diminished enjoyment of life, indicate that the jury reached improper verdicts, and the plaintiffs are entitled to a new trial.</u>

When the uncontroverted evidence indicated that Taramattie Doucette was unavailable to her husband and children while she managed the pain attendant upon her burn injury, and the jury nonetheless found that there had been no loss of consortium or loss of parental companionship, it is evident that the jury was improperly influenced by prejudicial factors which the defendant focused upon throughout the trial. The key factor was the defendant's insistent theme that the adult plaintiffs were attorneys, and therefor not credible. The jury in effect punished the plaintiffs for being members of the bar. In this context, the trial court has broader discretion to order a new trial, than when a low verdict is the only indication that the verdict was improper. See <u>Phav v. Trueblood, Inc.</u>, 915 F.2d 764, 768-69 (1st Cir. 1990).

Conclusion

For the above reasons, the plaintiffs move this Court to order a new trial on the claim of Taramattie Doucette for pain and suffering and diminished enjoyment of life, and for Robert Doucette individually for loss of consortium and Robert Doucette as next friend of Patrick Doucette and Christopher Doucette, for loss of parental companionship.

Respectfully submitted,

For the plaintiffs

*/s/ Margaret G. Barmack*
Margaret G. Barmack
BBO No. 029660
Barmack & Boggs
41 Ocean Street
Lynn, MA 01902
Tel. 781-596-2540

Certificate of Service

I, Margaret G. Barmack, hereby certify that the within motion for a new trial was served on the defendant by facsimile and mailing postage paid on even date to Atty. Christopher Sullivan, at Davis, White & Sullivan, One Longfellow Place, Suite 3609, Boston, MA 02114.

Date: 10/17/05

*/s/ Margaret G. Barmack*
Margaret G. Barmack