UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TARAMATTIE DOUCETTE,  )<br>ROBERT DOUCETTE, INDIVIDUALLY  )<br>AND AS NEXT FRIEND OF CHRISTROPHER  )<br>DOUCETTE, SEAN DOUCETTE AND  )<br>PATRICK DOUCETTE,  )<br>       PLAINTIFFS  )<br>V.   )<br>   )<br>PANERA, INC.,  )<br>       DEFENDANT  )<br>   ) | CIVIL ACTION NO. 04-10960-RBC |

**DEFENDANT PANERA INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR A NEW TRIAL**

**A.    THE PLAINTIFF MISTATES THE LAW IN THE PLAINTIFFS' MOTION
FOR A NEW TRIAL**

The Plaintiffs' Motion for a New Trial ("the Motion") asserts the trial judge can make his own judgment regarding credibility. This is a misstatement of the law. Additionally, the Motion states that a judge may grant a new trial despite substantial evidence supporting the verdict. This statement is true, but the Motion fails to take into account the very limited and special circumstances under which this statement can be true.

A motion for a new trial should only be granted if the outcome of the trial is "against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 171 (1st Cir. 2005) (quoting Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 375 (1st Cir. 2004)). The review of the evidence must be made in the light most favorable to prevailing party at trial, drawing all reasonable inferences in its favor and without evaluating the credibility of the witnesses or the weight of the evidence. Lama v.

Borras, 16 F.3d 473, 475 (1st Cir. 1994) (citing Santiago-Negron v. Castro-Davila, 865 F.2d 431, 445 (1st Cir. 1989); Forrestal v. Magendantz, 848 F.2d 303, 305 (1st Cir. 1988); Computer Sys. Eng'g v. Qantel Corp., 740 F.2d 59, 65 (1st Cir. 1984)). The Court may order a new trial even where the verdict is supported by substantial evidence when there are other grounds supporting a new trial. See Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994) (citing Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987) (citing Hubbard v. Faros Fisheries, Inc., 626 F.2d 196, 200 (1st Cir. 1980)); see generally 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 2805-2810, at 37-77 (1973) (describing traditional alternative grounds for new trial, including errors of law as well as misconduct on the part of court, counsel, or jury).  As set forth below, there is no basis for the granting of a new trial. Accordingly, the Motion should be denied.

**B.   THE JURY'S VERDICT WAS REASONABLE IN LIGHT OF THE LIMITED DAMAGES PRESENTED IN THE PLAINTIFFS' CASE**

   **1. PLAINTIFF PURSUED A RECOVERY FOR PAIN AND SUFFERING ONLY**

The Plaintiffs as a matter of trial strategy declined to introduce any evidence of lost wages or medical bills incurred as a result of Plaintiff's burn injury to her foot on November 10, 2001.  The only evidence that was submitted at trial on behalf of the Plaintiffs was the verbal testimony of the Plaintiffs Taramattie Doucette and Robert Doucette regarding the initial burn and the subsequent pain and discomfort allegedly caused by the neuropathic pain syndrome which the Plaintiff claims she suffered from. A reasonable inference can be drawn from the jury verdict that the testimony of both of the Plaintiffs together with the Plaintiff's expert witness, Dr. Schulz was not believed and discounted completely with respect to the claim of ongoing disability, pain and discomfort as a result of the "neuropathic pain syndrome".  The jury had an ample opportunity to review not only the medical records of the treating physicians,

2

but also had a chance to assess the credibility of the Plaintiffs as well as their expert witness Dr. Schulz and the Defendant's expert witness Dr. D'Alton. The inability of the Plaintiff Taramattie Doucette to prove her case by a preponderance of the evidence with respect to her claimed injury of neuropathic pain syndrome and continuing pain, discomfort and disability is not a result of the jury ignoring the Plaintiff's evidence, but simply findings of fact which did not support it. Dr. D'Alton's testimony was clear, crisp, concise and came to the conclusion the Plaintiff suffered no such neuropathic pain syndrome or continuing disability.

The Plaintiffs in their Motion for a New Trial assume the $10,000 verdict is a low verdict and "so unreasonable" to justify a new trial is based upon a faulty premise. The award of $10,000 is more than adequate based upon the jury's careful weighing of the modest evidence of damages. The jury exercised good judgment, prudence and sound discretion. The Plaintiffs in summary are asking for a new trial, not because of any irregularities in jury instructions, admission of evidence or improper conduct, but simply because they disagree with the judgment of the jury. No such basis exists for a Motion for a New Trial on the grounds of disagreement in value of a verdict. The Plaintiffs' wish to substitute their own judgment for that of the jury is not a legitimate basis for a new trial. The medical evidence before the jury, as will be discussed below, more than substantiates a $10,000 verdict.

2.  **MODEST MEDICAL EVIDENCE OF DAMAGES WARRANTS $10,000 VERDICT**

   a. Visiting Nurse Association Records Document Good Healing And Substantial Reduction Of Pain Within Nine Days Of Accident.

   The Visiting Nurse Association records of November 15, 2001 reflect the Plaintiff's blister on her right foot had drained and was in good healing condition (Exhibit "A)". Paula Hovey, RN the visiting nurse caring for the plaintiff also

3

found her complaints of pain had been reduced by 50%-60% from November 13, 2001 to the date of her discharge on November 19, 2001. (Exhibit "A")  Dr. Donnelly, her primary care physician from Harvard Community Health Plan also was in agreement there was no need for any further visiting nurse care and discharged the Plaintiff from the care of the visiting nurses on November 19, 2001.

b. <u>Primary Care Physician Dr. Donnelly Recommends The Plaintiff Stop Using Silvadene Solution And Recommended Only Showering With Soap And Water For Treatment Of Burn</u>

Dr. Donnelly, the Plaintiff's primary care physician found by November 19, 2001 the Plaintiff's wound had healed to such a rapid rate there was no longer any need for any type of medical dressing or antibiotic crème to be used on the Plaintiff's wound.  Rather, he recommended she use soap and water and "jump right into the shower".  The Plaintiff herself admitted to considering jumping into the Jacuzzi for further treatment and therapeutic care for the Plaintiff's wound on that date. (Exhibit "B")

c. <u>The Medical Records Of Harvard Community Health Plan Document The Plaintiff Was Returning To Work By November 20, 2001</u>.

The Harvard Community Health Plan records of November 21, 2001 reflect the Plaintiff was already back to work within 11 days of the accident on November 10, 2001.  (Exhibit "C")   The jury could reasonably infer at this point in time that the Plaintiff's pain and suffering was limited as a result of her ability to return to work full time in Boston to carry out her usual job responsibilities.

d. <u>The Plaintiff's Medical Treatment Was Very Limited For the First Six Months And Then Became Sporadic Thereafter</u>

The medical treatment the Plaintiff received initially after the accident following the nursing care by the Visiting Nurse Association and her primary care physician

dropped off dramatically after the first six (6) months.  Please see the chart below which documents the limited medical treatment of the Plaintiff:

## DATES OF MEDICAL SERVICES RENDERED TO PLAINTIFF TARAMATTIE DOUCETTE

| **Date of Service** | **Medical Provider** |
|---|---|
| 11/10/01 11:43 a.m., 10:56 p.m. | North Shore Medical Center |
| 11/13/01 Through 11/18/01 | VNA of Greater Salem<br><br>6 nursing visits |
| 11/28/01 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 11/30/01 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 1/28/02 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 5/8/02 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 6/7/02 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 8/23/02 | Harvard Vanguard of Peabody - Dr. Robert Donnelly |
| 7/14/03 | Steven Van Dam, MD (consult) |
| 8/18/03 | David Crowley, MD (consult) |
| 10/4/04 | Kenneth C. Gorson, MD (consult) |
| 4/18/2005 | John T. Schulz, MD (litigation consult) |

      The jury could rationally infer this limited amount of medical treatment coupled with the Plaintiff's return to work within ten (10) days after the accident reflected minimal pain and suffering as a result of the Plaintiff's foot burn.

   e. <u>Dr. Gorson A Consulting Neurologist Referred To The Plaintiff's Continuing Complaints Of Pain As "Nuisance"</u>

      Dr. Gorson the second neurologist the Plaintiff sought for an alternative opinion regarding the "neuropathic pain syndrome" was of the opinion, based upon his experience and examination of the Plaintiff her condition was akin to a "nuisance". (Exhibit "D")  Dr. Gorson was not called as a witness at trial presumably because his opinion was damaging to the Plaintiff's case on pain and suffering.

**3.**    **<u>DR. D'ALTON TESTIFIED THE PLAINTIFF DID NOT SUFFER FROM NEUROPATHIC PAIN SYNDROME</u>**

      Dr. D'Alton testified on behalf of the Defendant based upon his education, training, experience as a neurologist over the past two (2) decades the Plaintiff did not suffer from neuropathic pain syndrome.  He based his opinion upon his review of the medical records, his clinical experience as well as his examination of the Plaintiff. The jury reasonably believed Dr. D'Alton's testimony regarding no neuropathic injury and rejected the testimony of the Plaintiff's expert witness Dr. Schulz who claimed there was continuing disability and neuropathic pain syndrome.  These are findings of fact that a jury makes in their regular course of deliberating on any case involving personal injuries.  The fact a jury rejected one expert's opinion (Dr. Schultz) and accepted another expert's opinion (Dr. D'Alton) is not the basis for a new trial.

**4.**    **<u>RECORDS OF THE PLAINTIFF'S PRE-EXISTING TEMPERATURE SENSITIVITY IS A LOGICAL BASIS FOR THE PLAINTIFF'S CONTINUING COMPLAINTS OF HYPER-SENSITIVITY</u>**

      Medical records from Harvard Community Health Plan reflected the Plaintiff suffered from temperature hyper-sensitivity following a car accident in 1995 and 1996

which manifested themselves not only in Plaintiff's upper extremities, but also in her lower extremities. The jury could reasonably infer that any continuing complaints with respect to temperature sensitivity which the Plaintiff suffers from today are as a result of this other condition which pre-dated the accident and had nothing to do with the foot burn on November 10, 2001.

5. **THE DISFIGURATION CLAIM OF THE PLAINTIFF IS NOT SUPPORTED BY THE EVIDENCE**

The Plaintiffs in their motion for a new trial cite to a comment made by one of the Plaintiff's treating physicians, Dr. Mayo Johnson, in which a reference is made the Plaintiff is "complaining of pain and disfiguration in her right ankle . . .". This comment by the physician is one which is attributed to the Plaintiff complaining of disfiguration and is not a finding by Dr. Johnson that he in fact found scarring and permanent disfiguration of the Plaintiff's foot. The evidence at the time of trial which was before the jury was photographs taken in 2004 which showed no scarring or disfigurement in the right foot or ankle whatsoever (Exhibit "E"). The jury allocated $10,000 in damages based upon facts including the photographs demonstrating no permanent disfigurement.

C. **ROBERT DOUCETTE'S CLAIM OF LOSS OF CONSORTIUM WAS NOT SUPPORTED BY THE EVIDENCE**

Mr. Doucette testified alternatively he did not have intimate relations with his wife in his deposition for a period of six (6) months and on another occasion in his testimony in court testified it was two to three (2-3) months. Deposition testimony was used to impeach Mr. Doucette during trial with his prior inconsistent statements impairing his credibility. The Plaintiffs' claim in their Motion for a New Trial that Mr. Doucette should simply be believed and any of his prior inconsistent statements should be discounted is not an appropriate basis for a new trial. The jury is free to

believe the testimony of any witness in its entirety, in part or none at all. The jury obviously did not believe Mr. Doucette suffered any loss of consortium. The facts certainly support this finding of the jury as the nature of the injury to Mrs. Doucette did not physically prevent the two Plaintiffs from having intimate relations. In fact, Mr. Doucette admitted on the record no medical personnel ever limited or recommended the two Plaintiffs not engage in sexual relations.

      The divorce records which Mr. Doucette was cross-examined with demonstrate the lack of a close relationship prior to the time of this accident existed between Mr. and Mrs. Doucette. Despite the best efforts of Mr. and Mrs. Doucette to claim the suing of each other in Essex Probate Court really was not anything which should be considered by the jury, the jury disagreed in finding it was significant. Mr. Doucette's description of both he and his wife suing each other in divorce court, being represented by separate counsel and then claiming they drove off to lunch following conferences with their divorce attorneys was completely unbelievable. The jury was free to disbelieve everything Mr. Doucette had to say based upon testimony such as the above he asserted during the course of the trial. Mr. Doucette was impeached repeatedly with his deposition transcript and the divorce records on the issues of when the divorce was filed, whether he counterclaimed and sued Mrs. Doucette individually, whether a dispute arose with respect to child custody, whether a separation took place, whether a separation agreement was signed and finally for how long they were separated following their filing for divorce.

      Mr. Doucette was also impeached with respect to his inconsistent statements of living outside of the house for one period of time in 1992 and 1993 during the divorce and a second occasion when he was not permitted to live in the house in 1997-1998.

Mrs. Doucette in fact impeached her husband Robert Doucette by testifying there was a second time (1997-1998) when he was not to living at the house for a period of ten (10) months. Both Mr. and Mrs. Doucette were completely unbelievable with respect to their testimony concerning the divorce and the impact it had on the loss of consortium claim of Mr. Robert Doucette.

**D.    PLAINTIFFS PATRICK DOUCETTE AND CHRISTOPHER DOUCETTE ARE NOT ENTITLED TO A NEW TRIAL AS THERE IS NO BASIS FOR THE AWARD OF ANY DAMAGES FOR THE LOSS OF PARENTAL COMPANIONSHIP CLAIMS**

Little or no evidence was presented by the Plaintiff, for whatever reason, to support a claim for loss of parental companionship for the Plaintiffs Christopher Doucette and Patrick Doucette. Neither of the two children testified at the time of trial. In fact, neither of them either appeared in the courtroom during the week long trial. No medical evidence was presented from a psychologist, psychiatrist or any medical provider documenting any type of injury, pain or suffering the two minor children sustained as a result of November 10, 2001 accident involving Taramattie Doucette. No medical expert witness, pediatrician, clinical psychologist or social worker testified regarding any negative impact the two minor children suffered as a result of this limited injury to the Plaintiff Taramattie Doucette on November 10, 2001.

The brief anecdotal testimony of Mr. and Mrs. Doucette regarding how the two minor children were affected by the burn to the Plaintiff Taramattie Doucette's right foot was barely sufficient to withstand a Motion for Directed Verdict. The jury was free to accept some of the testimony, all of the testimony or none of the testimony of the Plaintiffs on this parental companionship claims. The fact the jury in analyzing the evidence put forward determined there was not a credible basis for a loss of parental companionship claim does not form a legitimate basis for the Plaintiffs to ask for a

9

new trial.  The Plaintiffs once again attempt to substitute their own judgment for that of the jury in determining the claims of the two minor children.

## CONCLUSION

The Plaintiff's Motion for a New Trial in effect requests the proverbial "second bite of the apple" because they are unhappy with the jury's verdict.  The jury was attentive, careful and thorough in their determination as to what would be the appropriate amount of money to compensate the Plaintiff for her pain and suffering in this matter in awarding $10,000.00.  The jury was out for approximately two and one-half hours in deliberations and should not be second guessed.  The Plaintiffs' are asking the Court to substitute the Plaintiffs' judgment for that of the jury.  A new trial is not warranted on these grounds.

        Respectfully submitted,
        PANERA, INC.
        By its attorneys,


        /s/ Christopher J. Sullivan
        Christopher J. Sullivan, BBO# 545137
        Kevin J. Fleming, BBO# 637419
        DAVIS, WHITE & SULLIVAN, LLC
        One Longfellow Place, Suite 3609
        Boston, MA  02114
        (617) 720-4060

Dated: _____